*Let this be filed [signature] 7/10/14*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


ADRIENNE SMITH

    Plaintiff,

v.                                          Civil Action No. 1:14-CV-00728 (EGS)

THE WORLD BANK GROUP
JIM YONG KIM, PRESIDENT


Defendants


## SUBMISSION OF DEFENDANT'S  LETTER RESPONDING TO COMPLAINT AND PLAINTIFF REFUTING  DOCUMENTS


Now comes the Plaintiff pro se at this time submitting a letter to the Court received from Defendant's legal counsel Ms Leroy responding to the received EEOC complaint filed in United States Court in April, 2014.  In this letter, Defendant's attorney denies all accountability and liability including  providing provisional financial relief based upon the fact that Plaintiff signed a Mutual Separation Agreement (MAS).

Plaintiff is submitting Defendant's letter to the Court. Plaintiff does not deny that she signed this document but apologizes to Court for shortcomings in making her claim. Plaintiff believes that there is importance for how a person's signature was obtained on a contract which determines if the contract should be held enforceable or not enforceable.

Plaintiff's signature was obtained by extreme threats and coercion by senior management Human Resources managers Barbara Rickwood and Alphonso Marcelius along with senior manager Colin Bruce. Plaintiff's intention was never in agreement with this contract.

Plaintiff  has consistently fought to maintain her employment and financial stability for over eight years and is providing documents to directly refute Defendant's scheme. Plaintiff states that this is not a MAS contract as it was designed to be used because it was obtained under coercion,

**RECEIVED**

JUL - 1 2014

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

threat and duress and should not be recognized legally or enforced anywhere where the rule of law is recognized and practiced.

Plaintiff states that it was never her intention to give up her needed employment and that the alternative she was confronted with of **not** signing would have put her in immediate financial harm.  Plaintiff's state of mind at that before during and after threats in October, 2011 and continuing is documented in submitted documents written by her and by a former staff representative to internal senior managers and to United States Congresswomen Eleanor Norton and Sheila Lee.

Plaintiff had no other employment or income and was never willing to give up her permanent staff status. Plaintiff is not close to a mandatory retirement age and had relied to her detriment upon a firm promise and commitment expressly made to her months earlier that she would be given a fresh start and moved to a new work assignment. Period. Senior manager Colin Bruce later denied he made this promise while in the presence of  the two personnel managers chairing the meeting, staff representative Kathy Waters Reed and a successive ombudsperson Thomas Zgambo who was on speakerphone.

Plaintiff has made consistent efforts during eight years to  receive due process inside of this organization and not been successful. Plaintiff's case is usual as in behavior and treatment of Black American employees which is now more recognized as systemic racial discrimination bleeding out of the bank into the Black American community creating health issues and extended financial distress upon families of aggrieved staff, Black educational institutions, the public and the Black community.

The Lugar/Leahy Law is a mechanism created to provide an external due process path for staff because of the bank's historical structure that continues to demonstrate a 1960's unconscionable disregard for staff, particularly Black Americans and fails to provide  *independent due process. Lugar /Leahy is not seeking to remove immunity but recognizes the human rights abuses created by* management's complete abuse of authority in all ways. Its constant, direct intervention in creating and controlling false, unjust discriminatory outcomes for employees is unlike any other foreign policy initiative: the United States is carrying the white man's burden right here in such a unique niche, and paying huge sums of money to finance new abuses against Black employees,

their families and the entire community. President and Eleanor Roosevelt may be spinning in their graves that the best intentions have prorogated such a racist organization.

Plaintiff is directly refuting the validity and credibility  of this 'mutual separation agreement contract with an email train that former Staff Association Counselor Ms Phyllis Muhammad sent immediately during the same time in October of 2011 to United States Congresswoman Sheila Lee explaining how senior world bank Human Resource (HR) managers Alphonso Marcelius, Barbara Rickwood and manager Colin Bruce took advantage of their individual and combined administrative powers in their professional capacities. Plaintiff was told  bluntly that if she did not sign a MAS, she would be terminated and on the street within days 'with nothing'. Unlike many non United States and U.S. professional bank managers  who  have a cushion of added financial resources,  this is not the case for Black American employees.

On October 18, 2011, Plaintiff was at home preparing to leave to spend the day celebrating her mother's birthday when her staff representative Kathy Waters-Reed called to inform her that they were being told to come to the bank offices  to a private senior management meeting room. Ms Waters-Reed did not know what it was in reference to but hoped it was to announce where and when Plaintiff's new assignment was to begin.

Once Plaintiff and her staff representative arrived, they were forced to wait for some time before being led into a private manager meeting room. Led by senior corporate manager Marcelius, Plaintiff and Ms Waters were submitted to a surprise psychological attack which stunned both of them. Threats, pressure and insults followed. Colin Bruce directly told Plaintiff that she did not measure up. Plaintiff replied that 'that's what you say to African Americans' while her staff counselor sat stunned and also traumatized in disbelief by this confrontation and complete shift of Colin Bruce's personality.

Plaintiff believed and had no reason to think that these managers would not follow through on their threats to her based upon their previous and increasing aggressive behavior against her in recent years. Plaintiff  and her representative were also aware of extreme HR behavior in several well known cases that removed staff physically from their employment offices. In her complaint, Plaintiff lists over twenty  internationally recognized manager behaviors in discrimination and harassment cases. Legal intimidation is considered one of the most severe forms of abuse. Legal intimidation is commonly viewed as one of the most egregious weapons of terror that some

employers will resort to if they believe they will not be stopped and can get away with it. Up until now, this has been the overwhelming, successful history of the bank's HR team exerting internal bank management control with no independent due process.

Managers followed up from this meeting and emailed Plaintiff a draft of 'closing' terms under this 'mutual' agreement. Plaintiff forwarded this to others to beg for her job and job transfer. Ms Muhammad forwarded it to Congresswoman Lee. Plaintiff continued to email a senior advisor of outgoing president Robert Zellick, Deborah Wetzel, who carefully constructed a sanitized response excluding all abusive history to satisfy management's version presented in Ms Leroy's letter.

 Plaintiff states that after this, she signed no additional 'retirement' transitional documents as would an employee actually seeking early employment termination under an MAS. Plaintiff knows numerous staff who have chosen on their own to leave 'early' who are close to mandatory retirement age (62) and for staff who actually decide to leave early for their own personal life reasons.  Plaintiff understands this as the legally acceptable use of a MAS and knows staff who were able to use their pensions or had other job opportunities or other means of financial support. Due to a delayed hiring, Plaintiff does not have a pension.

 Plaintiff states that her MAS signature was obtained under joint, planned coercion and requests that it be treated as unconscionable and not enforceable. Plaintiff's documents  directly refute the Defendant's unspoken premise that somehow this Plaintiff was 1) given any kind of viable choice and 2)that she gave her signature for the outcome she wanted in a state of mind that she was ready to retire. This is entirely false.

Plaintiff was never interested in or prepared to leave her employment early and expressed this repeatedly when approached previously and publicly by HR Barbara Rickwood. Plaintiff's representatives also expressed this as well. Plaintiff does not believe that being terminated and put 'on the street with nothing' is a viable option, that is, in other words, facing immediate financial disaster within days.

To  immediately refute Defendant's letter claiming no responsibility to provide provisional relief, Plaintiff is submitting a very small sampling of documents to establish that the MAS contract was not a single isolated administrative effort, but a final management attack that harmed her by separating her from her employment and income following years of previous *targeting efforts s against her* failed instead of management and HR actively addressing the real problems and assisting her in an open, honest professional standard.

Plaintiff's refuting documents submitted now are a small sample representing a long term history and context to establish that *this mutual separation was not an isolated act of her choice*, but of malicious intent falling within an escalated pattern of management abuses that fit into many of the twenty plus categories listed in her court complaint. This type of targeting is treated as a criminal offense in the European Union countries.

 Plaintiff apologizes to the Court for her limited knowledge of contract law but knows that the managers who coerced her were considered in their official capacities to be 'fit and knowledgeable' to perform their HR jobs and therefore know that their professional planning, participation and behavior in this type of scheme falls far beneath current, credible standards of civil labor law even here in the United States.

In 1998, Plaintiff was a temporary agency employee working in a unit where numerous management violations were underway. Plaintiff was not aware of these cases at all or of the situation with this manager until she was informed during a tea break that she would have to leave the unit because the manager wanted her out removed right away. This unit manager demanded that her local HR manager cut Plaintiff's agency contract *even as staff stated that she had performed well and supported the unit's work with no problems.* Not known right away to Plaintiff, several staff had identified Plaintiff as a preferred candidate to fill a new permanent, entry **level position in early 1998** *for work she had already been performing.*

Senior unit staff contacted the racial relations committee that included Mr. Aklog Bara who asked Plaintiff to give an account of this work experience because it was an example of blatant racial targeting. As a new agency temp beginning in November, 1997 with limited exposure and knowledge, Plaintiff was not aware that this unit manager situation was not an  isolated racial incident. Because Plaintiff agreed to testify,  she had to change units; HR delayed Plaintiff's subsequent hiring in another unit for well over a year. HR made many dubious excuses to

Plaintiff's former hiring manager who complained openly to staff every month that she had never encountered such difficulty hiring a staff person.

Plaintiff's new hiring manager had hired numerous African nationals for this unit but Plaintiff was the only Black American she hired before she retired in early 2001. Having to change units and HR's long delay changed the trajectory of Plaintiff's bank career, financial benefits and long term compensation.

Examples include previous management attempts that failed to declare her redundant; Plaintiff has attached her  response email outlining falsification of information; illegal documented manager collusion to demoralize and demean her daily and yearly without cause, poor 'management team' evaluations that violate the bank's own administrative policies against discrimination and harassment; artificially low, inaccurate yearly evaluations which were also contested by four different staff representatives and cited by the previous senior Ombudsman, yearly and accumulated *salary sabotage* also noted by former senior Ombudsman that harmed her but also negatively impacted the organization's work through managers' blatant disregard for their fiduciary responsibility and disregard for records management and accurate, audited accounting processes.

Specific submitted documents include:

- Follow up letter in 1999 from Attorney Schott formally expressing dismay for failed Bank management commitments to Africans and Plaintiff caught up in the Helena Ribe 1998 unit

- Emails from the former senior Ombudsman Fred Temple identifying severe salary undercuts for years, missing and falsified yearly evaluations, attempts to intercede with management to transfer me over a period of years, questions about the incompetent management and passing blame onto me, questions about why bullying was not being addressed

- **a contrived and failed internal mediation** between my Office Administrator (OA) Faye Harbottle and myself that the attorney/mediator  Geetha shut down because there was no confidentiality or independence in this process. Previous Mediation Officer Deborah Laufer and my first staff advocate Anu Onus opened a mediation but closed it because of

evidence  gathered that the group harassment and problems I was encountering were far beyond the capacity of mediating and required HR cooperation which was denied. Later when I was 'pressed' to mediate by a successive Mediation Officer, I asked to mediate with the critical point manager Sudhir Shetty but was 'pushed'  instead to meet with Faye who had no authority whatsoever. Her email comments all revert back to Sudhir Shetty, Antonella Bassoni and Hilda Emeruwa for approval. It then  became apparent to our mediator, Geetha, that  Faye Harbottle  was not the right party and had no management independence and authority.  Prior to stopping the mediation, Geetha called to inform me that she could not continue in good faith with this process. Her honesty is appreciated:  as a human being and consultant with a conscience, she refused to continue a process that was painful for her and designed to fail.

- Emails from several of  four women who served as my staff representative, Anu Onus, Phyllis Muhammad, Isabelle Bleas and Kathy Waters-Reed.  Several from Kathy to the then VP of the entire Africa region listing ongoing long term unsolved issues that the bank managers refused to acknowledge or correct that blocked all career advancement and financial corrections .

- My email *response to their first illegal redundancy I received calling them to the fact that they had just hired someone with my same job title which* the bank has been cited for previously, is illegal and invalidated the excuse  they were phasing out this position.

- When I requested a formal investigation on 3/28/11, a second redundancy was hand - delivered 10 days later in front of many staff by the manager above my unit manager, Miria Pigato, who escorted me to his glass office to sign

- My email request to the employee staff association representative Robert Sheed to file a complaint against HR managers Barbara Rickwood and  Marcelius. The Staff Association is funded by  HR.

- Letters written on Plaintiff's behalf  from Congresswoman Eleanor Norton that were not acknowledged.

- My emails to meet with United States executive directors to be transferred, my continued emails in April, 2012 to Deborah Wetzel who was a senior advisor to the former bank president Zellick to transfer me.

Plaintiff actions continued to focus on obtaining a management correction following the October 18th meeting. Plaintiff did not give up and did not sign transitional documents even for retirement medical benefits to which would have supported senior personnel managers.

Plaintiff's doctor Dr. Oliver Kreitman emailed Dr. Kim over one year ago asking him to please provide medical insurance during this employment dispute because of a need for internal testing for bleeding. A bank lawyer wrote back <u>confirming in fact that Plaintiff has no health insurance coverage but stating that "she" can <em>sign up as a retiree</em></u>. Plaintiff has still not signed up as a retiree and is currently on Medicaid.

Plaintiff was unable to advance professionally while numerous managers who participated in her the abuse were rewarded for their behavior through notable promotions including several who were positioned and became directors with benefits increases.

Plaintiff compares the entrenched racist managers in this organization to that of Los Angeles Clippers' owner Donald Sterling: after decades of being cited and sued for racial discrimination in housing, employee discrimination legal cases and continuing business without any accountability, there is now a legal mechanism in place that has acted to hold him accountable despite his protesting, legal fighting and denials: the commission is finally acknowledging that racism is bad for business and must be stopped. Private communications are exposed and present the ugliness: ultimately it is the same: the bank needs to be held accountable for its severe, outdated behavior whether it denies its behavior is illegal; it is unacceptable and indefensible in a real business /workplace, it is demoralizing for the players, payers and employees, bad for business and insulting to the sensitivities of forward thinking people everywhere who can't believe that this type of behavior and thinking is still thriving and has any place in society in 2014.

In a formal organization, when any one's person's racist attitude becomes apparent, the point of leadership and decision making authority must therefore change even by exception of the autonomy because such extreme revelations justify legal intervention.

Plaintiff was alive when Dr. King still lived and like most Black Americans have some experience of discrimination. However, given the bank's history to ignore and then periodically promise to recruit more Black Americans, this is still very dangerous for Blacks who have no idea of what they are entering into, how severe environment is and allowed to thrive and are not prepared to believe that after accepting an employment position they have to cope and survive in an environment flush with individuals who have no legal consequences for targeting behaviors known mostly now in history books and black and white film.

Plaintiff asks the Court to consider the ramifications for future Black Americans who may be recruited to not allow them to become new targets of convenience; previous unfulfilled bank promises and public relations efforts as in the repeating Donald Sterling history: until legal pressure is applied to force change to address current staff suffering to receive external some form of due process, all are endangered and more personal and professional damage is guaranteed against unprepared Blacks coming into the organization. Refusal of the World Bank to adhere to acceptable moral decency and accountability by 21st century respectful work standards will mean continued targeting, demeaning and ignoring Black American staff, their existence and rights as human beings.

Plaintiff requests and prays that the Court provide external due process for mediation as stipulated in The Lugar/Leahy Law. As the 2009 Government Accountability Report (GAP) states "...it appears that (bank) staff members and job applicants of Black African heritage who allege racial discrimination are unlikely to receive the compensation or vindication they seek before the Tribunal."

Justice through independent judicial due process within this organization must be obtained through needed a intervention mechanism. Plaintiff prays for Provisional relief and external mediation.

_Adrienne Smith_
Adrienne Smith

I hereby certify on that a copy of this motion is being mailed to President Jim Kim at the World Bank at 1818 H Street, Washington, DC 20433