UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ADRIENNE SMITH

    Plaintiff,

v.                                       Civil Action No. 14-728(EGS)

WORLD BANK ET AL

Defendants

## PLAINTIFF'S MOTIONS OPPOSING DEFENDANT'S MOTIONS TO VACATE DEFAULT JUDGMENT MOTION AND TO DISMISS CASE

Now comes the Plaintiff Adrienne Smith Opposing the Defendant's motions to vacate the default judgment motion and to dismiss this case.

Plaintiff is grateful to the Court for time to submit this motion. Plaintiff asks the Court to grant her motion for default judgment and not to dismiss her case to ensure that she has a path for immediate financial survival and long term remedies. A default set-aside would be harmful to Plaintiff as she needs immediate financial relief.

Plaintiff denies all of the Defendants' claims of insufficient service as reasons to dismiss the case and avoid a default judgment. This includes claims they did not receive or see her complaint until they had to look it up on the court website in September, 2014. When Plaintiff re-sent the summons in September using United Parcel Service, she did not send additional copies of the complaint *because* the Defendants already received the complaint in May, 2014 and responded.

Plaintiff showed proof with the letter dated June 16, 2014 signed by World Bank General Counsel Ms Leroy. In her EEOC Court complaint filed in April, Plaintiff specifically gave Francis Dikoh's address as an alternate contact address. Plaintiff explained in her complaint that her elderly parents were very upset and agitated in 2012 by World Bank Human Resources' repetitive telephone calls and Federal Express messengers attempting to deliver packages. Plaintiff **encloses to the Court** a *signed notarized statement from Francis Dikoh* that he received the letter World Bank attorney Ms Leroy signed and mailed to *his* address at 1414 Upshur Street, NW, Washington, DC. There is no other way that the Bank in-house attorney Ms Leroy was able to

mail her signed letter *to Plaintiff's requested Upshur address* without having received and read the court complaint.

Plaintiff also views Ms Leroy's letter dated June 16, 2014 as misleading because she never acknowledged receiving Plaintiff's court complaint. Ms Leroy's written response reads as though the Plaintiff had just submitting her *Provisional Relief Request* to the Bank for the first time.

Plaintiff **first submitted** her request for provisional relief to the Bank by email on February 15, 2013. One of her former staff representatives, Phyllis Muhammad, emailed her request for external due process to then- United States Bank Executive Director Ian Sullivan. Please see enclosed copy of email with a full copy of Plaintiff's request for Provisional Relief.

Plaintiff emailed the **second time** on October 10, 2013 to Bank President Dr. Kim and the World Bank's Executive Directors and requested provisional relief and external due process. The Bank chose again to ignore the Plaintiff. Please see the enclosed copy of this email titled 'Public Hunger Strike by World Bank Employee'.

Plaintiff was preparing to begin a hunger strike prior to her public protest walk the next day. Plaintiff caught cold in the rain and was sick for several weeks. She did not go on the fast. *Plaintiff has included two photos of* her front and back bread signs requesting external due process and provisional relief. Plaintiff was in full view when she marched on the public sidewalk directly outside the main Bank building over two hours the Friday of the 2013 Annual Fall meetings in October. Again, the Bank chose to ignore her public request for interim financial relief. Plaintiff's face is pursed because it was cold and very rainy that day.

When Plaintiff requested provisional relief in her court complaint that was filed in April, 2014, it was her **third time** making the provisional request. The Bank is very aware that Plaintiff needs immediate financial and health relief.

Plaintiff disputes the Defendant's recent motions denying liability and accountability to provide immediate relief by continuing to assert that the Mutual A. Separation that she signed under threat, coercion and duress is a valid, enforceable contract. 'Leave or be removed literally' were not options that should ever have been forced onto Plaintiff. Plaintiff had already overcome two previous redundancy attempts by HR before being 'set-up' and terrorized with this horrific

ultimatum on October 18, 2011. In the HR meeting called by Barbara Rickwood and HR senior manager A.Marcellius that afternoon, senior Africa regional Manager Colin Bruce told Plaintiff that she 'wasn't good enough' and shocked Plaintiff's staff representative who was visibly shaken for hours afterwards. Actions such as these are criminally prosecutable in many European countries which provide funding to the bank.

Plaintiff responded to Ms Leroy's letter dated June 16,2014 and filed documents disputing the legality of this contract to the Court in early July 2014. Plaintiff mailed copies of these documents to Defendants which they have surely received.

Because of the Defendant's misleading assertions in both of their motions, Plaintiff called back to the U. S. Official Mails Department which has already provided proof of service for two of Plaintiff's mailings through its non public, internal tracking documentation to the Court.

The U.S. Postal Service Official Mails Department takes these repeating claims and accusations very seriously as a denigration of its service and mail fraud. A senior postal employee commented about civil servants who repeatedly claim they 'didn't' get the paperwork and advised Plaintiff to file a complaint to United States Attorney General Eric Holder. Plaintiff asked for an interim way to file a complaint. *A copy of Plaintiff's mail fraud complaint is enclosed.*

Plaintiff requests that her default judgment be granted because the delay was willful. Plaintiff's employer has demonstrated the *pattern to ignore* documentation on more than one occasion until there is a written threat of default. Another Bank attorney also claimed in a letter dated June 14, 2013 to the **EEOC** that the reason the Bank had never responded in ten months to the EEOC is because they did not receive the EEOC's full packet mailed to them in 2012. Plaintiff had nothing to do with the EEOC's mailing. With the U.S. postal service's minute tracking and the bank's consistent, reliable couriers, the repeating 'didn't receive' claims lose credibility. The Plaintiff is not responsible for the paper trail within the Bank. *Plaintiff is enclosing a copy of the warning letter the EEOC sent and the Bank's response.*

Plaintiff disputes the excuses given by the Defendants for not responding to the Court for over six month delay as invalid. Bank counsel are misrepresenting the facts. Defendants have ample financial resources, complete office facilities, paper, printers, ink, laptops, desktops, legal software, and human assistants. Plaintiff's employer retains well compensated in-house and

external legal counsel who are competent to understand and file many motions within the appropriate time rules under the United States Federal Rules of Civil Procedure.

Reading, writing, typing and printing her documents on her own, Pro Se Plaintiff rejects these additional burdens and asks the Court not to accept the Defendants' claims or their failures to comply within procedural and reasonable time limits in over six months.

The Plaintiff asks the Court to grant her default judgment and not dismiss her case. Regardless of the variety of motions and legal arguments the Defendants could have filed, any and all motions *should have been* made sooner and not well past six months and multiple deadlines. Defendants could have 'jumped in and filed their motions anytime during the past six months. Plaintiff paraphrases the quote from the World Bank attorney she put in her complaint, there must be some appearance that the rule of law is respected.

Plaintiff also opposes the Defendant's claims that her motion for default judgment should be dismissed because she did not file her default motion within proper time limits. While Pro Se Plaintiff continues forward, Defendant's counsel, who have filed nothing on time, state that she failed to file her default motion in a timely manner and the default motion should be dismissed. The Court has cited several cases, Fox v. Strickland, 837 F. 2d 507 (D.C. Cir 1988); Neal v. Kelly, 963 F. 2d 453 (D.C. Cir 1992)---that Plaintiff believes do not support the dismissal of federal cases when the plaintiff is pro se and was not made aware of impending filing deadlines by the court.

If jurisdictional immunity is like Teflon, Plaintiff does not see the reason to mislead or misrepresent any facts. Jurisdictional immunity *run amok* means *to be blind* to all things, to all acts of malice, to disruptive influences, to justice, to assault and to accountability in case that might hamper the organization from conducting its activities and its ability to operate worldwide.

Plaintiff was instructed to file a complaint with the United States Equal Employment Opportunity Commission (EEOC) in July, 2012 by a United States Department of Treasury employee in her official capacity. Plaintiff was receiving help with a financial crisis arising from her long term, distorted employment situation.

A veteran EEOC employee, very aware of the Bank's vast employment history, interviewed Plaintiff and determined that there were viable claims including racial and age discrimination and retaliation. Plaintiff encloses a copy of the charges which were submitted to the D.C. Office of Human Rights. During a follow up trip to the EEOC, an investigator, Mr. Garcia, explained clearly to Plaintiff that the EEOC was going to begin to fully pursue Bank staff employment issues. Mr. Garcia was very direct and forceful in his statements.

The EEOC Washington, D.C. office sent a second letter to the Bank dated May 22, 2013 warning that it could now make a default finding for the Plaintiff because after ten months the Bank had not responded. This letter was sent after Plaintiff's GYN Oliver Kreitmann, sent an email directly to the Bank asking that her medical insurance be restored so she could have medical testing for internal bleeding. A bank lawyer emailed back to Dr. Kreitmann confirming that the Plaintiff was not insured at all, but could *sign up 'as a retiree'*. Plaintiff did not sign up as a retiree because she did not willingly resign and give up her employment.

As already stated, the EEOC's warning letter was answered by a Bank attorney dated June 14, 2013 again claiming that they didn't respond because they did not receive the EEOC's full package. Plaintiff encloses a copy of the letter sent by the EEOC and the Bank's letter. The EEOC closed her case but gave Plaintiff a right to sue letter to seek due process and relief through legal channels. By federal law, Plaintiff was compelled to follow EEOC procedures and time requirements to file her case within 90 days in court to preserve all legal rights and legal remedies.

Plaintiff has now followed both the Department of Treasury employee directive to file a complaint to the EEOC and Congresswoman Eleanor Norton's staff Counsel directive to file her case in U.S. court to seek due process, relief and to preserve her rights by any and all legal paths to justice. Plaintiff encloses two Congressional letters sent by Mrs. Norton's office to the World Bank in 2009 and 2012 and Congressman Elijah Cummings' 2013 letter to Plaintiff following up from Congressman John Lewis' referral. Phyllis Muhammad also submitted an email sent on Plaintiff's behalf on October 21, 2011 to Congresswoman Sheila Jackson Lee explaining the Bank's collective mobbing of Plaintiff on October 18, 2011 which is already in the Court record.

Plaintiff is fighting for her survival and for her life. Plaintiff's health and finances have been seriously compromised since 2006 and continuing two and a half years after being forced from

her employment. Racially biased manager Hilda Emeruwa told her to her face that African-Americans are 'very aggressive' and questioned Plaintiff's immediate supervisor Faye Harbottle, 'can (Adrienne) be controlled?" Plaintiff reported too many such assaults to the Bank's Ombudsman office. *Plaintiff is submitting three authoritative statements from her health care provider Faith Lewis:* one to the Court November 2014, one written previously to Congresswoman Eleanor Norton in 2009 and one previously written to then- World Bank Head of Health Services Dr. Bernard Demur in 2008.

Almost fifteen years ago the 105th Congress requested a Government Accountability Office (GAO) report concerning the personnel policies, treatment and grievance process for Bank Staff. By the time the requested 1999 (GAO) report completed its research of serious employee abuse, lack of due process and inadequate remedies, The United States Congress, Senate and the General Accountability Office (GAO) understood that the World Bank needed concrete changes and made recommendations. Plaintiff is submitting authoritative sources, The 105th Congress Senate's Report (complete copy, see page 43) and the 1999 GAO Report "World Bank Status of Grievance Process Reform".

The Department of Treasury answers to the United States Congress and Senate and is responsible for overseeing the Bank's U.S. mandated compliance for administrative, financial and personnel functions. Please see page 24, 'comments From the Department of the Treasury' of the GAO report.

Following this 1999 GAO report, the Bank's internal grievance system was updated but proved within a short time to be heavily influenced by management and very retaliatory with no independence. Due Process was still missing and the system was not adequate to address bias cases.

Five years ago in 2009, the Government Accountability Project (GAP) released its report "Racial Discrimination at the World Bank" which focused on Black American and African staff. Black American staff are almost non existence and are treated even worse in the Bank than African nationals.

Plaintiff swears to this by her personal knowledge and experience. Plaintiff encloses a copy of this Report to the Court. See Pages 19-21, 'The Absence of Black American Professionals.' Five

pages of recommendations centered on the same issues as the 1999 report for employment grievance processes including the lack of independent due process, an inadequate internal system to resolve bias cases fairly and a one-sided burden of proof.

Plaintiff has enclosed 'How the World Bank's Peer Review Services Deny Staff the Right to a Fair Hearing 2011' (GAP) which discusses the Bank's refusal to deny current staff the right to select independent arbitrators. On page 29, under recommendations, it concludes that the current internal system (as of 2011) failed to meet the standards for an impartial hearing.

After decades of promises and failing to implement authentic due process reforms, The World bank's refusal to comply with the Lugar-Leahy Amendment triggered the passage of the United States Consolidated Appropriation Act in 2012 that requires the U.S. government to withhold approval for the Bank's capital increase until it has made substantial progress in providing external, independent judicial access for staff.

Plaintiff apologizes to the Court for typing information that may already be understood much better than she can write it. The intent of the Lugar-Leahy Amendment is to introduce an independent, fair grievance resolutions system as an international best practice *without infringing* on the World Bank's immunity. The new law requires the Bank to *actually implement this* policy. Please see enclosed article, 'New U.S Law Requires World Bank to Implement Whistleblower Protections.'

Plaintiff reads that the responsibility rest with the U.S. government Department of Treasury but is not aware of the steps needed to climb to get to the front door. Plaintiff believes that the Lugar/ Leahy laws are designed to be a two way street.

Plaintiff believes that the legislative intention of President Obama and elected representatives Congresswoman Norton, Congressman John Lewis and Congressman Elijah Cummings want Plaintiff and others who can least afford the greatest harms and injury to receive due process and remedies. In the lane on the other side, more allotted Bank funds will be used as they were intended.

As the Treasury Department would certainly not like to be accused of suppressing or denying any basic legal right such as voting, for example, Plaintiff believes that just as federal courts were

instrumental in implementing federal laws to desegregate schools, housing and to obtain voting rights for denied citizens, had the states *not* been legally pressed, there would not have been concrete due process changes for Black Americans citizens who would not have stood a chance for continued survival and a better day. Justice delayed is justice denied.

Plaintiff's EEOC and court complaints are appropriate and are applicable to be heard within the United States federal government system with needed legal enforcement of the Lugar-Leahy 2005 Amendment and the subsequent Consolidated Acts of 2012. In Plaintiff's court complaint, United States Lugar/Leahy laws were cited as a path to seek due process, financial relief and remedies not through the Bank itself but *through* the United States government which the Department of Treasury is legally responsible for implementing.

Plaintiff has shown that she has repeatedly asked the bank for provisional relief and external due process. Plaintiff needs and is entitled to a path to due process. As noted in the GAP Peer Review Report, rather than penalizing the Bank's offending managers, the Bank pays for their financial damages from the *Bank's central budget 'with few consequences for managers or units found to have violated a staff member's rights'* (GAP's Peer Review, pages 29, 36sec E, page 37)

These insights provide a perspective of a huge costly negative incentive which is ineffective for the needs of the organization, the bank's clients, current and former staff.

Plaintiff is asking and seeking the Court's help to obtain due process through legal, administrative or legislative paths. Plaintiff needs and is entitled to receive independent legal and or administrative due process to continue her life to be able to work and to heal.

After almost ten years there does not appear to be a paved path for this law that the Treasury Department needs to implement. If a Court action is needed, Plaintiff respectfully asks the Court to intervene.

Plaintiff does not have the resources to pay for lawyers to negotiate on her behalf. No access to justice creates poverty and injustice. Plaintiff worked for almost fifteen years in an organization with the public mission statement to end poverty. Plaintiff's financial hardship and poverty has been created by that agency.

Plaintiff has always worked and been very self-sufficient which is currently not possible due to the situation created by her employment termination. Plaintiff needs income to remain in and keep her home, for food, to have bus fare, insurance to drive her car and to live. Plaintiff does not see where it is in the best or further interests of the bank to continue on this path as it will not further the Bank's mission to do so in business dealings.

Lack of access to due process has literally and figuratively left Plaintiff naked and exposed. It is to this extent and depth that Plaintiff prays to the Court to grant her default judgment motion and not to dismiss her case and to obtain immediate provisional relief.

Plaintiff swears under penalty of perjury that all is true to the best of her personal knowledge.

*Adrienne J. Smith*

Adrienne Smith
November 28, 2014


I hereby certify that a copy of this motion is being mailed to the Defendants at 1818 H Street, N.W. 20433